666 F.2d 441
 109 L.R.R.M. (BNA) 2606, 93 Lab.Cas. P 13,225
 William H. AYRES, Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; Local Union
No. 125, International Brotherhood of Electrical
Workers; and Public Utility District No.
1 of Clark County, Defendants-Appellees.
 No. 80-3358.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1981.
Decided Jan. 28, 1982.
 
 Richard L. Butler, Cook, Berst, Landeen & Butler, Seattle, Wash., for plaintiff-appellant.
 Richard H. Robblee, Hafer, Cassidy & Price, William A. Roberts, Seattle, Wash., Randolph L. Johnson, Vancouver, Wash., argued, for defendants-appellees; Vance, Davies, Roberts, Reid & Anderson, Hugh Hafer, Seattle, Wash., Blair, Schaefer, Hutchison, Potter, Horton & Johnson, Vancouver, Wash., on brief.
 Appeal from the United States District Court for the Western District of Washington.
 Before HUG and FARRIS, Circuit Judges, and WATERS*, District Judge.
 HUG, Circuit Judge:
 
 
 1
 This action for a claimed breach of the duty of fair representation was brought under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). The issue presented is whether the protections of section 301(a) apply to employees of states and their political subdivisions. We hold that such political entities are not employers for purposes of section 301(a), and affirm the district court's dismissal of the action for lack of subject matter jurisdiction.
 
 
 2
 William Ayres is employed by the Clark County, Washington, Public Utility District (the "District") in its Meter Department. His employment is governed by a collective bargaining agreement between the District and Local Union 125 (the "Local"). The Local is affiliated with the International Brotherhood of Electrical Workers (the "Union").
 
 
 3
 In 1973, Ayres applied for promotion to the position of relief meter foreman. The District required applicants to take a written examination. Ayres refused, claiming the requirement violated the District's collective bargaining agreement with the Local. When another employee was given the position, Ayres requested a grievance be filed.
 
 
 4
 The Local initially refused the grievance demand. It did request that the District re-evaluate applicants for the foreman position without giving consideration to the examination results. The District did so, and confirmed the promotion of the applicant it had previously chosen.
 
 
 5
 Ayres continued to pursue his dispute, and in 1976 the shop steward filed a notice of grievance. The Local again rejected Ayres's request, and the grievance was withdrawn. Ayres then filed this action, claiming that the District's failure to promote him breached the collective bargaining agreement and that the Union and the Local had breached their duties of fair representation in failing to pursue his grievance. He sought compensatory and punitive damages. The asserted jurisdictional basis was section 301(a).
 
 
 6
 The parties agreed that the District is a political subdivision under the definition applied in NLRB v. Natural Gas Utility District, 402 U.S. 600, 602-03, 91 S.Ct. 1746, 1748, 29 L.Ed.2d 206 (1971). It was formed by a vote of the public under the authority of state law. Its commissioners are elected and subject to recall. It holds public meetings and adopts its budget subject to public hearing. Power of eminent domain is granted the District, and its revenue is exempt from federal taxation.
 
 
 7
 Relying on this public entity status, the defendants argued they were not within the statutory definitions of "employer" and "labor organization," and were therefore not subject to section 301(a). They moved for summary judgment on the basis that the court lacked subject matter jurisdiction. The district court found that the District was a political subdivision and that it was not an employer under 29 U.S.C. § 152(2), and granted the summary judgment motions.
 
 
 8
 The determination of whether jurisdiction exists in this case requires analysis of relationships between the subchapters of the Labor Management Relations Act. Congress originally enacted subchapter II of the Act as the Wagner Act in 1935. That subchapter, commonly referred to as the National Labor Relations Act, created the NLRB; it defines unfair labor practices and outlines the Board's powers to prevent them. In section 2 of subchapter II, 29 U.S.C. § 152, "employer," "employee" and "labor organization" are defined. Political subdivisions of states are expressly excluded from the definition of "employer."[1]
 
 
 9
 The remainder of the Labor Management Relations Act was enacted in 1947. It adopted by reference the definitional provisions of the 1935 Act. Thus section 501, 29 U.S.C. § 142, states in part:(3) The terms "commerce," "labor disputes," "employer," "employee," "labor organization" ... shall have the same meaning as when used in subchapter II of this chapter as amended by this chapter.
 
 
 10
 Ayres argues that this definitional provision must not be automatically applied to section 301(a). He contends that section reflects congressional intent to create a federal forum the scope of which is very broad and which is dominantly employee-protective. He concludes that mechanical application of the definitional sections will bar some employees from the forum and thus defeat Congress's intent. Under his view of the statutes, states and their political subdivisions are excluded only from the jurisdiction of the NLRB and from enforcement of the provisions of the National Labor Relations Act. He contends that no exemption of political entities exists as to the remaining provisions of the Labor Management Relations Act, including section 301(a).
 
 
 11
 The arguments raised by Ayres were considered by the Third Circuit in a case virtually identical to this one, Crilly v. Southeastern Pennsylvania Transportation Authority, 529 F.2d 1355 (3d Cir. 1976). In a thoughtful and persuasive opinion, Judge Gibbons concluded that the literal terms of the Act indicate that section 301(a) does not apply to political subdivisions, and that there is insufficient legislative history to support a contrary interpretation. Although acknowledging the Act's theme of employee protection, Judge Gibbons determined that the application of section 301(a) to political subdivisions would be an expansion of coverage, a function committed to the legislature rather than to the courts. Id. at 1357. We adopt this view as the proper interpretation of the Act.
 
 
 12
 Had it been the intent of Congress to extend the protections of section 301(a) to public employees, we believe that purpose would have been stated more clearly. When Congress has wished to bring public employees within the coverage of other provisions of federal labor law, it has enacted explicit amendments or separate legislation. Examples of this include the 1974 amendments to the Fair Labor Standards Act, 29 U.S.C. § 203(d), which removed the public entity exemption to that Act,[2] and the Federal Labor Management Relations Act, 5 U.S.C. §§ 7101-7135, which created the Federal Labor Relations Authority. In contrast to those explicit enactments, there is no express provision for the coverage suggested here, and the explicit statutory language denies coverage.
 
 
 13
 Ayres relies upon Dente v. International Organization of Masters, Mates and Pilots, Local 90, 492 F.2d 10 (9th Cir. 1973), cert. denied, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974). Dente concerned our jurisdiction under section 301(a) to hear the claims of supervisory employees. We held that although supervisors are excluded from the statutory definition of employees,[3] Congress could not have intended to deprive them of the rights created by section 301(a). Other circuits have also determined that the explicit exception of supervisors from section 152 does not constitute an exclusion of supervisory employees from all provisions of the Act. See District 2, Marine Engineers Beneficial Association AFL-CIO v. Amoco Oil Company, 554 F.2d 774, 777 (6th Cir. 1977) (supervisory employee exemption limited to provisions of subchapter II of the Act); United States v. National Marine Engineers' Beneficial Association, 294 F.2d 385 (2d Cir. 1961) (exclusion of supervisory employees does not apply to subchapter III of the Act, relating to national emergencies).
 
 
 14
 However, Ayres's contention that Dente mandates a limitation of the section 152 definitions to subchapter II of the Act is incorrect. Dente merely requires that we avoid a "mechanical approach" to the literal terms of the statute. Dente, 492 F.2d at 12. Expansion of section 301(a) coverage to supervisors was clearly consistent with Congress's intent to protect employees. Expansion of coverage to include public employees involves the conflicting intent, not present in Dente, to exclude the states from the reach of federal labor laws. See Crilly, 529 F.2d at 1360. We decline to extend the coverage of section 301(a) to public employees without a clearer indication of congressional intent.
 
 
 15
 We hold that section 301(a) of the Act, 29 U.S.C. § 185(a), does not grant this court jurisdiction over the claims of an individual employed by a political subdivision of a state. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Laughlin E. Waters, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 29 U.S.C. § 152 provides in part:
 (2) The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.
 (3) The term "employee" shall include any employee, ... but shall not include any individual employed ... as a supervisor, ... or by any ... person who is not an employer as herein defined.
 
 
 [2]
 These amendments were held to be unconstitutional in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)
 
 
 [3]
 See footnote 1