508 P.2d 592

**K. L. HOUSE CONSTRUCTION COMPANY, INC., Plaintiff-Appellee,**

v.

**James J. WATSON, d/b/a Mesa Electric Co., Defendant-Appellant.**

**No. 9559.**

Supreme Court of New Mexico.

April 6, 1973.

784

Keleher & McLeod, William K. Stratvert, Don A. Rust, Albuquerque, for defendant-appellant.

Hannett, Hannett, Cornish & Barnhart, Albuquerque, for plaintiff-appellee.

## OPINION

McMANUS, Chief Justice.

The University of New Mexico, intending construction on its Electrical Engineering Building, sought funds from the federal government and construction bids from a number of general contractors. K. L. House Construction Company (contractor), in order to prepare its bid to the university, sought bids from a number of subcontractors. James J. Watson d/b/a Mesa Electric Company (subcontractor), in order to prepare its bid to contractor, sought price quotations from a number of suppliers. Thus it was that suppliers quoted their prices, subcontractor submitted his bid, and contractor submitted its bid to the university.

It is important to understand the situation at this point, a situation distinguishable from Stites v. Yelverton, 60 N.M. 190, 289 P.2d 628 (1955), relied upon by contractor. Stated simply, the university did not wish to give its unconditional commitment to the contractor until it was assured of federal funding. Contractor did not wish to give its unconditional commitment to subcontractor until it had an unconditional commitment from the university. Subcontractor did not wish to give his unconditional commitment to his suppliers until he had an unconditional commitment from contractor.

Fortunately, the university received its funding and gave a written contract to contractor on June 5, 1967.

Unfortunately, contractor did not give subcontractor a written contract until June 21, 1967. This was unfortunate for the following reasons.

First, use of the subcontractor's bid by the contractor did not constitute an unconditional acceptance. Tatsch v. Hamilton-Erickson Manufacturing Co., 76 N.M. 729, 418 P.2d 187 (1966).

Second, contractor's having asked the subcontractor to proceed with preliminary planning cannot be construed as the unconditional acceptance which subcontractor needed before he could make a commitment to his suppliers.

Third, subcontractor had expressly limited the firm prices in his bid to a period of 30 days from May 10, 1967, the bid date. He testified that this was because many of his suppliers would not give him assurances on their prices for longer than 30 days.

Fourth, subcontractor wrote a letter to contractor, received on June 14, 1967, which revoked the original bid and substituted a new, more expensive bid. An offer not under seal or given for consideration may be withdrawn at any time prior to un-

conditional acceptance by offeree. Tatsch, supra.

We conclude that there was no unconditional acceptance before revocation as required by Tatsch, supra, wherein the court said:

"A binding contract would result between the parties here only if Tatsch unconditionally accepted Hamilton's offer before it was withdrawn. Polhamus v. Roberts, 50 N.M. 236, 175 P.2d 196, 170 A.L.R. 991. The Supreme Court of Utah in R. J. Daum Const. Co. v. Child, 122 Utah 194, 247 P.2d 817, succinctly stated the means by which such an acceptance must be made manifest, thusly:

"'* * * Such an acceptance requires manifestation of unconditional agreement to all of the terms of the offer and an intention to be bound thereby. Such manifestation may be either written or oral or by actions and conduct or a combination thereof, but regardless of the form or means used, there must be made manifest a definite intention to accept the offer and every part thereof and be presently bound thereby without material reservations or conditions. * * *'"

The trial court concluded that there was an acceptance.

We must reverse. It is so ordered.

OMAN and STEPHENSON, JJ., concur.